**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAYLOR STEVER, *et al* <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL S. HARRISON, *et al*, <br><br> Defendants. | Civil Action No. 16-298 (JLL) <br><br> **OPINION** |

**LINARES, Chief District Judge.**

This matter comes before the Court by way of a motion to dismiss this action, which motion was filed by Defendants Michael S. Harrison and Michael S. Harrison LLC (collectively, "Defendants"). (ECF No. 48). Plaintiffs Rijalda Djakovac, Julio Canales, and Tracy A. Staniland (collectively, "Plaintiffs"), on behalf of a putative class, have opposed Defendants' motion (ECF No. 53), and Defendants have replied to that opposition (ECF No. 54).[1] The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Court denies Defendants' motion to dismiss the Consolidated Class Action Complaint. (ECF No. 32, "Am. Compl.").

I. **Background**

Plaintiffs are New Jersey residents who bring this putative class action lawsuit asserting a claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(a), *et seq.* ("FDCPA"). (Am.

---

[1] Plaintiffs Taylor Stever and Alejandra Trombley have settled their claims on an individual basis. (ECF No. 48-1, n. 1).

1

Compl. ¶ 10). Defendant Michael S. Harrison, LLC is a debt collection law firm located in New Jersey, and Defendant Michael S. Harrison is a debt collection attorney. (Id. ¶¶ 10-11).

According to Plaintiffs, they, along with all those in the putative class, received debt collection letters from Defendants. Plaintiffs allege that Defendants sent the collection letters in envelopes containing a glassine window. (Id. ¶¶ 26-30). Plaintiffs further allege that "[b]eing sent in window envelopes, the barcode immediately below the return address was visible through the window of the envelopes." (Id. ¶ 33). According to Plaintiffs, "when read or scanned," this barcode "results in a display of a string of numbers, such as the account number of the alleged debts Defendants assigned to Plaintiffs and/or a reference or registration code number." (Id. ¶ 34). Plaintiffs further allege that any person with a free smartphone scanner application could easily discover the information contained within the barcode. (Id. ¶ 36).

Plaintiffs allege that "[t]he account, reference or registration numbers exposed constitute personal identifying information and its disclosure has the potential to cause harm to the consumer." (Id. ¶ 38). Accordingly, Plaintiffs assert a claim against Defendants for violation of Section 1692f(8) of the FDCPA. (Id. ¶¶ 41-43). In pertinent part, Section 1692f(8) prohibits: "[u]sing *any language or symbol,* other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram . . . ." 15 U.S.C. § 1692f(8) (emphasis added).

Defendants filed the pending motion to dismiss Plaintiffs' Consolidated Class Action Complaint on April 21, 2017. (ECF No. 48). Specifically, Defendants argue that Plaintiffs lack standing to bring this lawsuit in the first instance, and that in any event, Plaintiffs have failed to state a claim under the FDCPA. Plaintiffs opposed Defendants' motion on June 5, 2017 (ECF No.

53), and Defendants replied to that opposition on June 12, 2017 (ECF No. 54).[2] This matter is now ripe for the Court's adjudication.

**II.  Legal Standards**

   **A. Federal Rule of Civil Procedure 12(b)(1): Standing**

Defendants seek to dismiss Plaintiffs' Complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mov. Br. at i). Ordinarily, however, Rule 12(b)(1)—as opposed to Rule 12(b)(6)—governs motions to dismiss for lack of standing, as standing is a jurisdictional matter." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, n.3 (3d Cir. 2015); *see also Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir.2007) ("Federal Rule of Civil Procedure 12(b)(1) provides that a party may bring a motion to dismiss for lack of subject matter jurisdiction."). The Court will therefore construe Defendants' motion as having been brought under Rule 12(b)(1).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Storino v. Borough of Point Pleasant Beach,* 322 F.3d 293, 296 (3d Cir.2003) (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)). "It is axiomatic that, in addition to those requirements imposed by statute, plaintiffs must also satisfy Article III of the Constitution." *Horvath v. Keystone Health Plan East, Inc.,* 333 F.3d 450, 455 (3d Cir.2003) (citation omitted). As the Third Circuit has articulated, the requirements of Article III standing are as follows:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the

---

[2] On June 19, 2017, Defendants also filed, as a "notice of supplemental authority," a June 13, 2017 opinion issued by Judge William J. Maritini which Defendants believe augment their argument that Plaintiffs do not have standing to bring this action. (ECF No. 55). The Court has considered that filing and the attached opinion of Judge Martini.

3

independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 188 (3d Cir.2006).

On a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cnty. Ct. Com. Pl.*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). "For the purpose of determining standing, [the court] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino,* 322 F.3d at 296 (citing *Warth,* 422 U.S. at 501).

### B. Federal Rule of Civil Procedure 12(b)(6)

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605

F.3d 223, 230 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that although, generally, a district court ruling on motion to dismiss may not consider matters extraneous to pleadings, a "document integral to or explicitly relied upon in the complaint may be considered without converting a motion to dismiss into one for summary judgment") (citation omitted).

### III. Discussion

#### A. Plaintiffs have Sufficiently Alleged an Injury In Fact

Defendants argue that Plaintiffs lack standing to bring the instant lawsuit. (Defs.' Mov. Br. at 3-8). In particular, Defendants contend that Plaintiffs have not met the injury-in-fact requirement of standing—"the '[f]irst and foremost' of standing's three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)).

An injury in fact must be both concrete and particularized. *Lujan*, 504 U.S. at 560. Here, Defendants argue that "Plaintiffs have not been harmed in any concrete or particularized way and their allegations that the bar code contained 'personal identifying information' does not meet the burden to confer Article III standing." (Defs.' Mov. Br. at 8). In other words, Defendants contend that Plaintiffs have alleged nothing more than a procedural violation of the FDCPA, which, in the absence of a concrete and particularized harm, does not rise to an injury in fact sufficient to confer standing. (Id. at 6).

In support of their arguments, Defendants principally rely on the recent Supreme Court case of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). In *Spokeo*, the Supreme Court considered the Ninth Circuit's ruling that a plaintiff asserting a claim under the Fair Credit Reporting Act ("FCRA") had standing to sue. There, the plaintiff alleged that the defendant had violated the

FCRA by gathering and disseminating incorrect information about the plaintiff. *Id.* at 1544. The Ninth Circuit held that the plaintiff had satisfied the injury-in-fact requirement of standing by alleging that defendant had "violated *his* statutory rights" and where plaintiff's "personal interests in the handling of his credit information are individualized rather than collective." *Id.* at 1546. The Ninth Circuit reasoned that "the violation of a statutory right is usually a sufficient injury in fact to confer standing." *Id.*

The Supreme Court vacated the Ninth Circuit's order and remanded with instructions that the Circuit consider both prongs of the injury in fact inquiry—that is, whether the plaintiff suffered an injury that was both concrete *and* particularized. *Id.* at 1545, 1550. The Supreme Court then addressed, in some detail, the injury-in-fact requirement in the context of a claim of a statutory violation. *Id.* at 1548-1550.

At the outset, the Supreme Court noted that "[i]njury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S. Ct. at 1547-48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820, n.3 (1997)). That is, even in the case of an alleged statutory violation, a plaintiff must sufficiently plead that he suffered an injury that was both concrete and particularized. *Id.* at 1548.

The *Spokeo* Court explained that a "concrete" injury need not necessarily be a "tangible" injury. *Id.* at 1549. For example, the Court noted that it had found standing in cases involving harm to one's First Amendment rights. *Id.* Further, the Court reiterated the principal espoused in *Lujan v. Defenders of Wildlife* that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578). The Court cautioned, however, that because "Article III standing requires a

concrete injury even in the context of a statutory violation . . . [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* At the same time, however, the Supreme Court explained, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1544, 1549.

Here, the principal question presented by Defendants' standing argument is whether the mailing of debt collection letters containing a barcode that could lead to the disclosure of personal identifying numbers have caused Plaintiffs to suffer a "concrete" harm. The Court finds that such allegations satisfy the concrete requirement of the injury in fact analysis.

The Third Circuit has not yet spoken directly on an FDCPA plaintiffs' ability to plead an injury in fact after *Spokeo*. *See Fuentes v. AR Resources, Inc.*, 2017 WL 1197814, *4 (Wolfson, J.) (Mar. 31, 2017).[3] However, the Circuit recently had occasion to consider the implications of *Spokeo* on the standing analysis in the context of a claimed violation of the Fair Credit Reporting Act ("FCRA") in *In Re: Horizon Healthcare Services, Inc. Data Breach Litig.*, 846 F.3d 625 (3d

---

[3] And, while the Court notes that numerous cases in this district have analyzed the issue of Article III standing in FDCPA cases after *Spokeo*, these cases generally concern allegations of false or misleading statements in debt collection letters (15 U.S.C. § 1692e) or unfair or unconscionable means in collecting a debt (15 U.S.C. § 1692f, generally). *See e.g., Fuentes v. AR Resources, Inc.*, 2017 WL 1197814, *4 (Mar. 31, 2017) (collecting cases); *see also Re: Lopez v. Law Offices of Faloni & Assoc., LLC et al.*, 16-cv-01117, 2017 WL 2399083, *2 (Wigenton, J.) (June 22, 2017) (noting that cases in this district have recognized standing in cases asserting violations of § 1692e); *Bock v. Pressler & Pressler, LLP*, 11-cv-7593, -- F. Supp. 3d --, 2017 WL 2304643 (D.N.J. May 25, 2017) ("[W]ith respect to violations of section 1692e, decisions in this district 'trend in favor of finding concrete injury under the FDCPA where the amount or validity of the debt has been misstated.'") (quoting *Thomas v. Youderian*, 16-cv-1408, -- F. Sup. 3d --, 2017 WL 1250988, *7 (D.N.J. Feb. 3, 2017)). The Court is not aware of any case in this district analyzing standing under a claim brought pursuant to 15 U.S.C. § 1692f(8), in particular. That is, the Court is not aware of any cases within this district analyzing FDCPA standing respecting a privacy-based, as opposed to information-based injury. It is worth noting, however, that this Court's conclusion that Plaintiffs have sufficiently alleged Article III standing is consistent with "'the overwhelming majority of courts' that have determined that FDCPA violations under §§ 1692e and 1692f give rise to concrete, substantive injuries sufficient to establish Article III standing." *Bock*, 2017 WL 2304643.

Cir. 2017). The Court finds the Circuit Court's analysis in *Horizon* highly instructive as to the instant matter.

In *Horizon*, plaintiffs alleged that "laptops[] containing sensitive personal information were stolen from health insurer Horizon." *Id.* at 629. On this basis, Plaintiffs claimed that defendant Horizon violated the FCRA by failing to protect the plaintiffs' personal information. *Id.* The Third Circuit summarized the *Spokeo* decision's analysis of the "concrete" requirement as follows:

> There are thus two tests for whether an intangible injury can (despite the obvious linguistic contradiction) be "concrete." The first test, the one of history, asks whether "an alleged intangible harm" is closely related "to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts." [*Spokeo*, 136 S. Ct. at 1545]. If so, it is likely to be sufficient to satisfy the injury-in-fact element of standing. *Id.* But even if an injury was "'previously inadequate in law,'" Congress may elevate it "'to the status of [a] legally cognizable injur[y].'" *Id.* (quoting *Lujan*, 504 U.S. at 578, 112 S.Ct. 2130). Because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is . . . instructive and important." *Id.* The second test therefore asks whether Congress has expressed an intent to make an injury redressable.

*Id.* at 638.

Upon consideration, the Third Circuit vacated the District Court's ruling that plaintiffs failed to plead a cognizable injury. In so ruling, the Circuit was guided by two earlier cases implicating Congressionally-recognized privacy concerns. *Id.* at 636 (citing *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) and *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015)). In both *Nickelodeon* and *Google*, the Circuit Court held that plaintiffs suing under various state and federal privacy statutes (including the Stored Communications Act and the Federal Wiretap Act) successfully asserted a concrete injury in fact based upon privacy violations. In *Nickelodeon*, the Circuit explained that "the unlawful disclosure of legally protected information" constituted "a clear *de facto* injury."

*Nickelodeon*, 827 F.3d at 274. The Court further recognized that "Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private." *Id.*

After considering *Nickelodeon* and *Google*, the Circuit then refuted the defendant's argument that *Spokeo* compelled a different analysis in *Horizon*. *Id.* at 636-37. First, the Court recognized the common law's interest in protecting an individual's private information. *Id.* at 638. The Court also noted that "with the passage of the FCRA, Congress established that the unauthorized dissemination of personal information by a credit reporting agency causes an injury in and of itself—whether or not the disclosure of that information increased the risk of identity theft or some other future harm." *Id.* at 639. The Circuit Court further noted that the FCRA's provision permitting a private right of action "clearly illustrates that Congress believed that the violation of FCRA causes a concrete harm to consumers." *Id.* at 639. Ultimately, the Circuit Court explained that "since the 'intangible harm' that FCRA seeks to remedy 'has a close relationship to a harm [i.e., invasion of privacy] that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' *Spokeo*, 136 S. Ct. at 1549, we have no trouble concluding that Congress properly defined an injury that 'give[s] rise to a case or controversy where none existed before.'" *Id.*

This Court finds that, notwithstanding *Spokeo*, Third Circuit precedent supports a finding that Plaintiffs in this case have sufficiently alleged a concrete injury that supports Article III standing. Plaintiffs here assert a violation of the FDCPA. The purpose of the FDCPA was to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). In enacting the FDCPA, Congress recognized that such abusive practices "lead to personal bankruptcies,

9

marital instability, the loss of jobs, and, relevant to our analysis, 'invasions of individual privacy.'" *Douglass*, 765 F. 3d at 302-303 (quoting 15 U.S.C. § 1692(a)).

It is Congress's concern of "invasions of individual privacy" which underlie Plaintiffs' theory of concrete harm. Notably, the Third Circuit has recognized those privacy interests as an individual's "status as a debtor" and the plaintiff's "financial predicament." *Id.* at 303-04.

In order to combat problematic debt collection practices, the FDCPA prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* Among other conduct, a debt collector is prohibited from "using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails . . . ." *Id.* at § 1692f(8). As the Third Circuit has noted, the disclosure of any language or symbol—even the disclosure of a debtor's account number—"implicates core privacy concerns." *Douglass*, 765 F.3d at 304.

Therefore, this case, like *Google*, *Nickelodeon*, and *Horizon* before it, implicates individual privacy concerns on which Congress has spoken.[4] Here, the harm that Plaintiffs allege—that is, the disclosure of barcodes that could be linked to identification numbers—is "the very injury that the [FDCPA] is intended to prevent." *Horizon*, 846 F.3d at 640.[5]

---

[4] Defendants' reliance on *Kamal v. J. Crew Grp., Inc.*, 15-cv-0190, 2016 WL 6133827 (D.N.J. Oct. 20, 2016) (Martini, J.) is misplaced. In *Kamal*, the District Court held that a plaintiff had not alleged an injury in fact under the Fair and Accurate Credit Transaction Act ("FACTA") by alleging that a retailer printed "more than the last five digits of a credit card number on a sales receipt" in violation of FACTA. In holding that plaintiff did not allege a concrete injury, the District Court specifically distinguished FACTA from legislation intended to protect privacy interests. *Id.* at * 2. That is, the District Court noted that "[t]he purpose of credit card truncation [as required by FACTA] is to limit incremental risk of fraud or identity theft, not safeguard one's freedom from 'injurious disclosure[] as to private matters' or 'intrusions upon the domestic circle' or some other traditional privacy interest." *Id.* In fact, the District Court distinguished the case before it from the Third Circuit's *Nickelodeon* decision, discussed above, where the Third Circuit found that plaintiff had standing based upon allegations of a violation of the plaintiff's privacy interest. *Id.* (citing *Nickelodeon*, 827 F.3d at 295). As discussed above, this case, like *Nickelodeon*, involves allegations of harm or the threat of harm in the form of a privacy violation that Congress saw fit to elevate to a statutory cause of action.

[5] While *Douglass* did not involve an analysis of standing, the Court nevertheless finds the discussion of the FDCPA to be helpful in this matter. In *Douglass*, the Third Circuit explained that "the disclosure of Douglass' account number raises . . . privacy concerns. The account number is a core piece of information pertaining to Douglass' status as a debtor and Convergent's debt collection effort. Disclosed to the public, it *could be used* to expose her financial

The Court is not persuaded otherwise by the fact that Plaintiffs have not alleged that any individual actually scanned the barcodes. (See Defs.' Mov. Br. at 7-8). That is, Article III standing may exist on either an "actual or threated injury." *Warth*, 422 U.S. at 500; *Horizon*, 846 F.3d at 635. Here, as discussed below, the disclosure of the barcodes is enough because "the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Spokeo*, 136 S. Ct. at 1550. That is, in enacting the FDCPA, Congress granted every individual the right to have his or her status as a debtor concealed from the public. To the extent Plaintiffs can successfully argue that the existence of the barcode threatened that right, Plaintiffs have sufficiently stated a concrete injury. *Fuentes*, 2017 WL 1197814, *5; *see also Thomas*, 2017 WL 1250988, *9 (McNulty, J.) (holding that a plaintiff in an FDCPA case alleging false or misleading statements has standing where "[d]eprivation of the right to be free of false or deceptive debt collection information, with the attendant risk of economic injury, is an interest recognized by the statute, and one reasonably rooted in the traditions of the common law").

Additionally, the Court finds that Plaintiffs have alleged a sufficiently "particularized" injury. That is, the letters containing the allegedly prohibited barcode "was directed at and sent to Plaintiff[s]." *Fuentes*, 2017 WL 1197814 at *5.

In summary, the Court finds that Plaintiffs have alleged a harm that is both concrete and particularized.

### B. Plaintiffs Have Sufficiently Alleged a Violation of 15 U.S.C. § 1692f(8)

As a second basis for dismissal, Defendants argue that Plaintiffs have failed to state a claim under the FDCPA because the suspect barcode is a "benign" symbol that should fall within a

---

predicament." 765 F.3d at 303. Ultimately, the Circuit held that the disclosure of an account number "has the potential to cause harm to a consumer that the FDCPA was enacted to address." *Id.* at 306.

11

"benign language exception" to Section 1692f(8)'s prohibition against "any language or symbol, other than the debt collector's address" appearing on an envelope. (Defs.' Mov. Br. at 9-20).

The Third Circuit has yet to consider whether a benign language exception exists in this district. *See Douglass*, 765 F.3d at 303. In particular, in *Douglass*, the Circuit Court declined to consider the benign language exception because it found that the disclosure of the debtor's account numbers were not "benign" in the first instance. *See id.* Similarly, because this Court finds that the disclosure of the barcode is not "benign" under the FDCPA, this Court finds that even if the benign language exception had been expressly adopted in this Circuit, the suspect barcode would not fall within that exception because the barcode at issue is not "benign." *See id; see also Park v. ARS National Servs., Inc.*, 2015 WL 6579686 (D.N.J. Oct. 30, 2015) (Wigenton, J.) ("However, as in *Douglass*, this Court need not reach the question of whether a benign symbols exception exists because the symbol at issue, the barcode, is not benign.").

At the outset, the Court finds that Plaintiffs have sufficiently alleged a violation of Section 1692f(8) of the FDCPA. In pertinent part, that Section prohibits the use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails . . . ." *Id.* The barcode visible through the glassine window is clearly a "symbol" on the envelope used to communicate with the Plaintiff debtors. Defendants do not argue otherwise. Thus, under a plain reading of the statute, Plaintiffs have sufficiently alleged a violation. Because the statute's language is plain, the Court's function is "to enforce it according to its terms," so long as "'the disposition required by the [text] is not absurd.'" *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759 (3d Cir. 2009) (quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)).

Defendants maintain that enforcing the FDCPA in this case would amount to an absurd result. Specifically, Defendants argue that "[w]ithout the benefit of a barcode scanner, the barcode cannot convey any information; it is simply meaningless black and white markings. Furthermore, the appearance of a barcode on the exterior of the plain white envelope does not suggest anything about the source or purpose of the enclosed letter." (Defs.' Mov. Br. at 15-16). Defendants also note that in order for a third party to scan the barcode, that third party would necessarily violate federal law by tampering with another's mail.[6]

Notwithstanding Defendants' arguments, the disposition required by a straightforward application of the plain language of the statute is not absurd because it is consistent with the Third Circuit's decision in *Douglass*.[5] In *Douglass*, the Third Circuit analyzed whether an internal account number and scanable quick response ("QR") code printed on the outside of an envelope violated the FDCPA. 765 F.3d at 302. The Circuit determined that it did violate the FDCPA because the account number was "a piece of information capable of identifying [the plaintiff] as a debtor" and "its disclosure has the potential to cause harm to a consumer that the FDCPA was

---

[6] This Court rejects Defendants' argument that "the imposition of liability under the FDCPA [in this case would be] inappropriate" because "[t]he only way to view the information stored in the barcode at issue requires illegal action by a third party." (Defs.' Mov. Br. at 16). In *Park v. ARS National Services, Inc.*, another District Court in this District considered the same argument in a factually identical case and found the argument "unpersuasive." 2015 WL 6579686 at * 5. Specifically, the Court explained that

> Neither the text nor the underlying purposes of the FDCPA provide any basis for such an exception. *See* 15 U.S.C. § 1692f. The FDCPA's broad language focuses on debt collectors' actions that could harm consumers and on protecting consumers' personal information. . . . Section 1692(b) also shows Congress' intent to broadly regulate debt collector behavior through the FDCPA despite the existence of related laws: "[e]xisting laws and procedures for redressing [injuries to consumers from abusive debt collection practices] are inadequate to protect consumers." This purpose of the FDCPA is further supported by the Third Circuit's focus in *Douglass* on the potential harm the debt collector's public disclosure of the plaintiff's account number could cause (i.e., an invasion of the plaintiff's privacy) rather than on whether a third party would violate the law in accessing or using that information.

*Id.* Therefore, the District Court in *Park* determined that "the remedial purposes and broad language of the FDCPA do not provide for exceptions to its prohibitions based on legislation that may forbid related behavior by third parties." This Court agrees with and adopts the *Park* Court's analysis.

enacted to address." *Id.* at 306. Stated differently, the Third Circuit found a violation where the envelope included "information pertaining to [the plaintiff's] status as a debtor and [the defendant]'s debt collection effort. Disclosed to the public, it could be used to expose [the debtor's] financial predicament." *Id.* at 303. Thus, in *Douglass* the Third Circuit focused on the privacy concerns underlying Congress's purpose in passing the FDCPA. *See id.* at 303–04; *see also* 15 U.S.C. § 1692(a), (e) (stating the purpose of the FDCPA is to "eliminate abusive debt collection practices" which contribute to "invasions of individual privacy").

As the Court in *Douglass* noted, "[t]hough several courts, including the Courts of Appeals for the Fifth and Eighth Circuits, have interpreted § 1692f(8) to permit an exception for certain benign or innocuous markings, they did so in the context of envelope markings that did not have the *potential* to cause invasions of privacy." *Id.* at 304 (emphasis added). Because the account number at issue in *Douglass* had the potential to identify the debtor and her debt, the Third Circuit declined to consider whether § 1692f(8) contains a benign language exception, on grounds that disclosure of an account number cannot be considered benign. *Id.* at 303. In distinguishing itself from the Fifth and Eighth Circuits, the Third Circuit noted that those courts "did not confront an envelope that displayed core information relating to the debt collection and susceptible to privacy intrusions." *Id.* at 305. Indeed, the markings at issue before those Circuits were the words "priority letter," "PERSONAL AND CONFIDENTIAL," and "IMMEDIATE REPLY REQUESTED." *See Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004); *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316 (8th Cir. 2004). Those markings, the Third Circuit found, were clearly more benign than account numbers which could lead to privacy intrusions.

This Court finds that, much like the envelopes in *Douglass* with visible account numbers, the envelopes at issue in this case included symbols that contained core information relating to the debtor's financial predicament. These symbols, therefore, implicate the core privacy concerns that the FDCPA was enacted to protect. Accordingly, this Court finds that the barcode is not benign, and thus, as the Third Circuit did in *Douglass*, the Court declines to consider whether any benign language exception applies.

In sum, the Court finds that Plaintiffs have sufficiently pled a cause of action under the FDCPA. The Court's conclusion is consistent with the requirement that remedial legislation such as the FDCPA is to be construed broadly. *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 148 (3d Cir. 2013) ("As remedial legislation, the FDCPA must be broadly construed in order to give full effect to [Congress's] purposes.")

**IV. Conclusion**

For the reasons stated above, the Court denies Defendants' motion to dismiss this action. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED: July 5th, 2017

JOSE L. LINARES
CHIEF JUDGE, U.S. DISTRICT COURT